

## SUPREME COURT OF MISSOURI
## en banc

*Opinion issued January 9, 2024*

IN RE: JOSEPH V. NEILL,  )
  )  No. SC100211
Respondent.  )

## ORIGINAL DISCIPLINARY PROCEEDING

In this original disciplinary proceeding, Joseph Neill stipulated to misconduct. The parties dispute only whether Neill is eligible for probation. Because Neill committed one or more "acts warranting disbarment[,]" he is not eligible for probation under Rule 5.225(a)(2)(C).[1] This Court suspends Neill's license to practice law indefinitely with no leave to apply for reinstatement for six months.

---

[1] Unless otherwise noted, all rule references are to Missouri Court Rules (2022). There is no dispute that Missouri Court Rules (2022) govern this proceeding because the information was filed in November 2022. *See* Rule 5.34 (2023). Rule 5.225 was repealed effective January 1, 2023. Rule 5.175(a) (2023) now sets out when a lawyer is eligible for probation:

> **(a) Eligibility.** A lawyer is eligible for probation, or stayed suspension with probation, if the lawyer:
>> (1) Is unlikely to harm the public during the period of probation and can be adequately supervised;
>> (2) Is able to perform legal services and is able to practice law without causing the courts or profession to fall into disrepute; and
>> (3) Has not committed acts that, absent mitigating factors, would warrant disbarment.

**Factual Background and Procedural History**

The Office of Chief Disciplinary Counsel ("OCDC") filed an information charging Neill with various violations of the Rules of Professional Conduct (the "Rules"). The Advisory Committee of the Supreme Court of Missouri appointed a disciplinary hearing panel (the "DHP") to hear the case.

Before the hearing, Neill and OCDC entered into a Joint Stipulation of Facts, Conclusions of Law, and Limited Recommendation for Discipline (the "Joint Stipulation"). Neill and OCDC agreed to the relevant factual background in the Joint Stipulation.

Neill became licensed to practice law in Missouri in September 1977 and has no prior disciplinary history. At all relevant times, he has been a sole practitioner with a general practice. Neill represented A.C. at various times beginning in 2003 and ending in November 2018.

In September 2018, an encounter took place between Neill and A.C. in Neill's office. OCDC and Neill stipulated there are two versions of the September 2018 encounter. A.C.'s version is that Neill grabbed her hand and started rubbing it across his genitals on the outside of his clothing. A.C. pulled her hand away. A.C. could tell Neill was semi-aroused. Prior to A.C. leaving Neill's office that day, Neill again grabbed A.C.'s hand in an attempt to place it on his genitals. Neill's version is that A.C. was at Neill's office and, while they were standing by the copy machine, Neill and A.C. together joined hands and very briefly together maneuvered their jointly held hands to the area on Neill's trousers above his genitals and they jointly rubbed that area for a few seconds.

2

After the September 2018 encounter, Neill continued to represent A.C. Neill's representation of A.C. ended in late November 2018.

In April 2019, the Circuit Attorney of the City of St. Louis filed an information against Neill. The information alleged Neill committed second-degree sexual abuse during the September 2018 encounter when "[Neill], for the purpose of arousing [his] sexual desire, subjected A.C. to sexual contact through the clothing by placing her hand on his penis without A.C.'s consent." After a bench trial, Neill was found not guilty. OCDC and Neill stipulated the criminal case against Neill is now closed and further stipulated Neill and A.C. did not have a consensual sexual relationship prior to the commencement of an attorney-client relationship between them.

In the Joint Stipulation, Neill and OCDC also agreed to the following conclusions of law:

> [Neill] violated Rule 4-1.7(a)(2) because his conduct placed his personal interests and state of mind over his client's interests.

> [Neill] violated Rule 4-8.4(d) because his conduct was prejudicial to the administration of justice.

> [Neill] violated Rule 4-8.4(g) because his conduct constituted sexual harassment of his client.

In the Joint Stipulation, Neill and OCDC agreed to recommend to the DHP and to this Court that the appropriate sanction is an indefinite suspension with no leave to apply for reinstatement for six months. The parties recognized that neither the DHP nor this Court would be bound by the discipline recommended in the Joint Stipulation. The parties did not agree as to whether Neill is eligible for a stayed suspension with probation

3

under Rule 5.225(a)(2). The parties submitted the Joint Stipulation to the DHP.

At the hearing before the DHP, Neill and OCDC submitted a joint exhibit containing transcribed copies of more than 150 personal text messages Neill sent to A.C. between July and September 27, 2018. During the last 10 days of September 2018, Neill sent more than 60 text messages to A.C. At the DHP hearing, Neill was asked, "When did you become aware that this conduct was wrong and inappropriate?" Neill answered: "Well, when did I -- it's a hard question to answer, because my guess is I was probably aware before it occurred that it was wrong." Neill was asked, "Prior to the time that the criminal charges were filed, did you know that your conduct violated [the Rules]?" Neill answered: "As I mentioned earlier, I'm sure I did." Neill testified A.C. was a single mother, and he provided her with financial assistance by giving her $1,000 on two separate occasions. Neill acknowledged the September 2018 encounter took place in his office on a Saturday morning when A.C.'s minor daughter was with her. Neill testified A.C. met him at his office to discuss her pending legal matters.

Following the hearing, the DHP found Neill committed multiple instances of professional misconduct under the Rules as stipulated by the parties. The DHP recommended Neill be suspended indefinitely from the practice of law with no leave to apply for reinstatement for one year with the suspension stayed and Neill placed on probation. Neill accepted the DHP decision, but OCDC rejected it.

Under Rule 5.19(d)(2), OCDC's rejection of the DHP decision places the matter before this Court to determine discipline under Rule 5.19(e) for Neill's stipulated violations of the Rules.

## Standard of Review

"This Court has inherent authority to regulate the practice of law and administer attorney discipline." *In re Purdy*, 661 S.W.3d 796, 800 (Mo. banc 2023) (internal quotation omitted). "This Court reviews the evidence *de novo*, independently determines all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law." *Id.* (internal quotation omitted). "This Court treats the DHP's findings and conclusions as advisory, and it may accept or reject any of the DHP's recommendations." *Id.* "Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed." *Id.* (internal quotation omitted).

## Analysis

Neill stipulated—and the DHP concluded—that he violated Rule 4-1.7(a)(2) because his conduct placed his personal interests and state of mind over his client's interests, Rule 4-8.4(d) because his conduct was prejudicial to the administration of justice, and Rule 4-8.4(g) because his conduct constituted sexual harassment of his client.

Rule 4-1.7(a)(2) prohibits conflicts of interest:

(a) Except as provided in Rule 4-1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Rules 4-8.4(d) and 4-8.4(g) provide it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice" and to "manifest by

5

words or conduct, in representing a client, bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, religion, national origin, ethnicity, disability, age, sexual orientation, or marital status."

"The privilege to practice law is only accorded those who demonstrate the requisite mental attainment and moral character." *In re Farris*, 472 S.W.3d 549, 562 (Mo. banc 2015) (internal quotation omitted). "The principal aim in disciplinary proceedings is not punishment." *Id.* "Instead, discipline is intended to protect the public and preserve the integrity of the legal profession." *Id.* "Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other members of the Bar from engaging in similar conduct." *Purdy*, 661 S.W.3d at 801 (internal quotation omitted).

This Court relies on its prior cases and considers the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1992) (the "ABA Standards") when determining discipline. *Id.* "Generally, when considering what sanction to impose, this Court considers four factors: '(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.'" *Id.* (quoting ABA Standard 3.0). "These four key factors provide a framework for all disciplinary matters, although other ABA Standards can also provide guidance as to appropriate sanctions for specific types of misconduct." *In re Kayira*, 614 S.W.3d 530, 533 (Mo. banc 2021) (internal quotation omitted). "The ultimate sanction imposed for an attorney who commits multiple acts of misconduct

6

should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *Purdy*, 661 S.W.3d at 801 (internal quotation omitted).

Neill does not dispute he committed misconduct in violation of the Rules. Although this Court is not bound by the Joint Stipulation, this Court concludes the parties' agreed recommendation of indefinite suspension with no leave to apply for reinstatement for six months is appropriate given the four factors outlined above and Neill's admitted misconduct in violation of Rules 4-1.7(a)(2), 4-8.4(d), and 4-8.4(g). This Court must decide only whether Neill is eligible for probation under Rule 5.225. Rule 5.225(a)(2) provides:

> **(a) Eligibility.**. . . .
>
> > (2) A lawyer is eligible for probation if the lawyer:
> > (A) Is unlikely to harm the public during the period of probation and can be adequately supervised;
> > (B) Is able to perform legal services and is able to practice law without causing the courts or profession to fall into disrepute; and
> > (C) Has not committed acts warranting disbarment.

The parties disagree as to whether Neill is eligible for probation under Rule 5.225(a)(2) and focus primarily on whether, under subdivisions (A) and (B), Neill is "unlikely to harm the public during the period of probation and can be adequately supervised" and "able to perform legal services and is able to practice law without causing the courts or profession to fall into disrepute." This Court need not reach those subdivisions. Neill is ineligible for probation under Rule 5.225(a)(2)(C) because he has committed "acts warranting disbarment." Neill committed "acts warranting disbarment"

7

by his admitted violations of the Rules, including sexual harassment of a client in violation of Rule 4-4.8(g), even if disbarment is not the discipline issued in this case due to mitigating factors such as lack of prior disciplinary history or cooperation with OCDC.[2] Mitigating factors may contribute to the conclusion that disbarment is not appropriate in a given case, but mitigating factors do not impact whether a lawyer has committed "acts warranting disbarment[,]" rendering a lawyer ineligible for probation under Rule 5.225(a)(2)(C).

As to the argument that this Court's prior cases demonstrate that Neill's stipulated misconduct does not amount to "acts warranting disbarment[,]" the few cases decided by this Court about eligibility for probation under Rule 5.225 are not analogous to this case. For example, in *In re Coleman*, 295 S.W.3d 857 (Mo. banc 2009), this Court found Coleman committed various violations of the Rules (not including sexual harassment under Rule 4-4.8(g)), analyzed Rule 5.225, and concluded Coleman was eligible for probation because "Coleman's actions arose out of ignorance of [the Rules] instead of an intention to violate the [R]ules, and it is likely that his misconduct can be remedied by education and supervision." *Id.* at 871 (internal footnote omitted). Here, Neill's actions did not arise out of ignorance of the Rules. At the DHP hearing, Neill testified he knew his actions were wrong before he engaged in the misconduct. As another example, in *In re Wiles*, 107 S.W.3d 228, 229-30 (Mo. banc 2003), this Court determined Wiles was

---

[2] Rule 5.175(a)(3) (2023) clarifies that probation or stayed suspension with probation is inappropriate when a lawyer has "committed acts that, absent mitigating factors, would warrant disbarment," even if disbarment is not the discipline entered.

8

eligible for probation under Rule 5.225 in a reciprocal disciplinary proceeding in which he stipulated to misconduct (not including sexual harassment under Rule 4-4.8(g)) and was publicly censured in Kansas. This Court concluded the "violations, while serious, do not rise to a level that would warrant disbarment." *Id.* at 230.

Neill relies on three disciplinary matters for his argument that probation is appropriate when a lawyer engages in consensual sexual activity with a client. *See In re Brady*, SC97859 (2019); *In re Gunther*, SC96162 (2017); *In re Bergman*, SC94683 (2015). This Court resolved each of those disciplinary matters by written order without opinion, and this Court's dispositions by written order without opinion have no precedential value. *See* Rule 84.16(b). Further, none of those written orders without opinion analyzes why probation was appropriate in each matter. Perhaps more importantly, unlike this case, none of those matters involved sexual harassment of a client in violation of Rule 4-4.8(g).

As OCDC notes, in this Court's recent decision in *Purdy*, a case involving 18 violations of the Rules including conduct of a sexual nature and a violation of Rule 4-8.4(g), neither the principal nor dissenting opinions addressed the possibility of probation or a stayed suspension with probation; instead, the principal and dissenting opinions disagreed over whether Purdy should be disbarred or suspended. *Purdy*, 661 S.W.3d at 802-04; *see also In re Schuessler*, 578 S.W.3d 762, 776 (Mo. banc 2019) (ordering indefinite suspension with no leave to apply for reinstatement for two years with no discussion of probation when Schuessler committed multiple violations of the

9

Rules including a violation of Rule 4-8.4(g) by making a racist and homophobic comment while in her office during working hours).

The DHP cited *Purdy* to support its conclusion that the parties' stipulated sanction of suspension is supported by case law and the ABA Standards. The *Purdy* principal opinion concluded ABA Standard 4.32 was the applicable standard for Purdy's sexual advances towards his clients, and his most egregious act of misconduct was his failure to avoid conflicts of interest in violation of Rule 4-1.7(a)(2) "by allowing his personal and sexual interests to interfere with his clients' legal needs." *Purdy*, 661 S.W.3d at 801. The principal opinion quoted ABA Standard 4.32: "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." *Id.*

But, again, *Purdy* involved no question of probation or of Rule 5.225. Although the *Purdy* principal opinion concluded ABA Standard 4.32 was the applicable standard in that case, disbarment is also an available sanction for a case involving conflicts of interest. Under ABA Standard 4.31:

> Disbarment is generally appropriate when a lawyer, without the informed consent of client(s): (a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client[.]

ABA Standard 4.31 sets out the baseline or presumptive discipline in this case, in which Neill admitted to three serious allegations of professional misconduct, including

sexual harassment of a client in violation of Rule 4-4.8(g).[3]  Because Neill committed

"acts warranting disbarment[,]" Neill is not eligible for probation under Rule

5.225(a)(2)(C) despite this Court's determination that Neill should not be disbarred on

these facts.

This Court's decision that Neill is not eligible for probation under Rule

5.225(a)(2)(C) is consistent with the ABA Standards.  The commentary to ABA Standard

2.7 provides:

> Probation is appropriate for conduct which may be corrected, e.g., improper
> maintenance of books and records, lack of timely communication with
> clients, failure to file income tax returns, or alcohol and chemical
> dependency.  In cases involving the use of illegal drugs, probation should
> only be used in conjunction with suspension.

Neill's conduct, including his admitted sexual harassment of his client in violation

of Rule 4-4.8(g), cannot be corrected.  *See Coleman*, 295 S.W.3d at 871 ("The ABA

Standards provide, however, for lesser discipline where the behavior was not intentional.

The ABA Standards suggest that probation is the appropriate punishment when the

---

[3] In *In re Littleton*, 719 S.W.2d 772, 778 (Mo. banc 1986), this Court rejected Littleton's request for a reprimand and suspended him indefinitely with no leave to apply for reinstatement for six months when he committed multiple violations of the Rules, including conduct of a sexual nature with a client.  In *Littleton*, this Court noted: "Suspension is never a proper substitute for disbarment.  Where an attorney has committed an act of fraud, dealt in a purposefully dishonest manner with a client, or sought to enrich himself dishonestly at the expense of others, disbarment is the appropriate sanction."  *Id.  Littleton* did not involve any issue of the propriety of probation under Rule 5.225 or otherwise and did not involve admitted sexual harassment of a client under Rule 4-4.8(g).  Further, in a dissenting opinion, Judge Welliver said he would have disbarred Littleton, noting:  "Sexual harassment and sexual assault of women are not among the qualifications for a license to practice law."  *Id.* at 780 (Welliver, J., dissenting).

conduct can be corrected and the attorney's right to practice law needs to be monitored or limited rather than revoked."); *see also In re Belz*, 258 S.W.3d 38, 46-47 (Mo. banc 2008) (suspending Belz indefinitely with no leave to apply for reinstatement for three years; rejecting Belz's argument that a stayed suspension with probation was appropriate discipline when "Belz acted with a dishonest and selfish motive in taking his clients' funds, he did so multiple times, and he had substantial experience with the law;" and concluding "[a] stayed suspension is simply not appropriate for this type of misconduct").

This Court's decision that Neill is not eligible for probation under Rule 5.225(a)(2)(C) is consistent with this Court's prior cases concerning disbarment.[4]  In *Kayira*, this Court noted "disbarment is the baseline sanction for knowingly converting client funds[.]"  614 S.W.3d at 532; *see also Farris*, 472 S.W.3d at 563 ("[D]isbarment is the presumptively appropriate discipline for misappropriating client funds.").  It would be absurd for this Court to conclude disbarment is the baseline sanction for financial wrongdoing toward a client by knowingly converting client funds without concluding disbarment is the baseline or presumptive sanction for the gross personal misconduct of sexual harassment of a client in violation of Rule 4-8.4(g).  Because Neill committed "acts warranting disbarment[,]" he is not eligible for probation under Rule 5.225(a)(2)(C).

---

[4] Neill cites no disciplinary cases in which this Court imposed probation when disbarment was the presumptive discipline, and this Court's research produced none.

## Conclusion

Neill is suspended indefinitely from the practice of law with no leave to apply for reinstatement for six months.

_____
Ginger K. Gooch, Judge

Russell, C.J., Powell, Fischer,
Wilson, and Broniec, JJ, concur.
Ransom, J., not participating.